what has unfortunately become a common mutual fund industry practice[3], the timer frequently offers the fund manager/Advisor more assets in exchange for the right to time. In return, fund managers (PIM) would allow timers (*e.g.* a hedge fund) to target specific funds (*e.g.* the Putnam Research Fund) which would be hurt in exchange for additional money in the managers own pockets in the form of higher management fees resulting from the timers placing of assets ("sticky funds") in other Funds offered by the mutual fund company (Putnam), usually liquid asset funds.

35.     The Putnam Fiduciary Defendants, employees, representatives, and fiduciaries inside Putnam, PIM and the Putnam Funds, were direct perpetrators, participants, and beneficiaries of the wrongdoing alleged herein. The Putnam Fiduciary Defendants obtained assistance to engage in late trading directly from PIM. In other instances, Putnam Fiduciary Defendants did not require assistance as they, themselves, were responsible for the management and administration of the Putnam Funds, including the entry and execution of trades in Putnam Funds. By and through their authority, access and control over the Putnam Funds, the Putnam Fiduciary Defendants engaged in late trading and market timing in the Putnam Funds for their own benefit at the expense of the Putnam Funds. By failing to enforce and/or follow regulations prohibiting late trading, PIM allowed, encouraged and facilitated the Putnam Fiduciary Defendants to buy and sell Putnam Funds, the very funds that defendants and their co-conspirators had the fiduciary duty to oversee and protect from such malfeasance, at the 4:00 p.m. price far beyond the 4:00 p.m. deadline. Moreover, PIM allowed, encouraged and facilitated the Putnam Fiduciary Defendants to engage in rapid short term trading of the Putnam Funds in contrivance of the rules and policies set forth in the Putnam Funds prospectus' and in breach of the fiduciary duties owed to the Putnam Funds. This conduct continued for a

---

[3] See *State of New York v. Canary Capital Partners et al.*(Supr. Ct. of N.Y. filed Sept. 3, 2003).

substantial amount of time and was well known within PIM and amongst the fiduciaries responsible for the management of Putnam Funds and was merely reflective of the self-dealing that pervaded Putnam Investments and PIM.

36. Throughout this same time period the Putnam Funds publicly maintained an excessive trading policy. For example, the fund share exchange policy described in the Prospectus for the Putnam OTC & Emerging Growth Fund, dated November 30, 2001 as revised May 30, 2002, states:

> The exchange privilege is not intended as a vehicle for short-term trading. Excessive exchange activity may interfere with portfolio management and have an adverse effect on all shareholders. In order to limit excessive exchange activity and otherwise to promote the best interests of the fund, the fund imposes a redemption fee of 1.00% of the total exchange amount (calculated at market value) on exchanges of shares held less than 90 days. The fund also reserves the right to revise or terminate the exchange privilege, limit the amount or number of exchanges or reject any exchange. The fund into which you would like to exchange may also reject your exchange. These actions may apply to all shareholders or only to those shareholders whose exchanges Putnam Management determines are likely to have a negative effect on the fund or other Putnam funds.

Virtually identical language was contained in prospectuses for other Putnam Funds.

37. In the face of such policy and their fiduciary duties, the Putnam Defendants knowingly, deceptively permitted and actively facilitated the Putnam Fiduciary Defendants' and John Does 51-100 market timing, by engaging in such self-dealing activity and by continuing such relationships with offending individuals to allow them to conduct late trading and/or market timing on the Putnam Funds to the detriment of the Putnam Funds.

38. The Putnam Fiduciary Defendants and John Does 51-100 realized significant profits as a result of these timing arrangements at the expense of the Putnam Funds. In many cases these profits also reflect late trading, as the Defendants would frequently negotiate a timing agreement with a mutual fund management company/advisor and then proceed to late trade the target funds through intermediaries.

14

39. As a result of the investigation by the Securities Division of the Secretary of the Commonwealth of Massachusetts, PIM announced on October 24, 2003, that it had terminated four money managers because they engaged in market timing trades of Putnam funds for their personal accounts. This termination occurred some three years after the Putnam Defendants became aware of the conduct.

40. On October 28, 2003, the SEC and the Commonwealth of Massachusetts filed civil lawsuits against defendants PIM, Scott and Kamshad. The complaints allege that the individual defendants used nonpublic information about their funds' holdings to profit personally from market timing as far back as 1998 and continued through March of 2003. Moreover, the complaints allege that PIM engaged in securities fraud by failing to disclose to fund shareholders the market timing acts and failed to take adequate steps to prevent Scott, Kamshad and John Does 1-50 from engaging in market timing. Allegations that the scheme continued until March, 2003, contradict Putnam's statements that it had stopped the market timing activity in 2000. The SEC continues to investigate Putnam and is considering bringing additional charges against other Putnam portfolio managers and continues to talk with Putnam to settle the charges.

41. These events have had and will have a series of deleterious effects on the Putnam family of funds, including but not limited to:

(a) Loss of confidence of the investing public in the integrity and management of the Putnam Funds, thereby resulting in the Putnam Funds losing NAV and market value.

(b) As a result of Defendants' misconduct, the Putnam Funds are exposed to significant regulatory scrutiny and to suit by investors for losses resulting from Defendants' misconduct, thereby, at a minimum, causing the Putnam Funds to incur unnecessary direct and

indirect investigatory, litigation and administrative costs, and potentially resulting in awards, judgments or settlements against the Putnam Funds.

## **DEMAND EXCUSED ALLEGATIONS**

42.    The Plaintiff has not made demand upon the trustees of the Trust or the directors of Putnam to bring an action against the Putnam Defendants, and other culpable parties to remedy such wrongdoing.

(a)    Demand is excused because no such demand is required for the Plaintiff to assert a federal claim under Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), for breach of fiduciary duty in connection with the compensation and other payments paid to Putnam.

(b)    Demand is also excused because the unlawful acts and practices alleged herein are not subject to the protection of any business judgment rule and could not be ratified, approved, or condoned by disinterested and informed directors under any circumstances.

(c)    Demand is also excused because the unlawful acts and practices alleged herein involve self-dealing on the part of the Putnam Defendants and its directors and officers, who manage and control the day-to-day affairs of the Trust and the Putnam Funds.

(d)    Demand upon the Trustees is also excused because the Trustees of the Trust are all hand-picked by Putnam management, and thus owe their positions as well as their loyalties solely to Putnam management and lack sufficient independence to exercise business judgment. Because the Trust oversees eighteen separate funds, the Trustees derive substantial revenue and other benefits for their services.

(e)    Finally, demand is excused because such demand would be futile. The unlawful acts and practices alleged herein have been the subject of an intense investigation which resulted in civil charges by the Securities Division of the Secretary of the Commonwealth

of Massachusetts.[4] Consequently, Putnam already have been informed of the wrongdoing alleged herein and have failed and refused to take appropriate action to recover damages for the Putnam Funds. Moreover, Putnam's lackadaisical response is clearly insufficient and demonstrative of the conflicts, and true allegiances, of the Trustees of the Trust. In announcing the termination of four fund managers because of their involvement in the conduct under investigation by the Commonwealth of Massachusetts, Putnam acknowledged that it had been aware of the unlawful conduct since 2000, yet took no disciplinary action against the offenders and has done nothing to stop or correct it. In fact, Putnam allowed the offenders to keep the profits they had made from market timing, at the expense of shareholders. Moreover, Putnam misled the public by claiming that it had stopped such activity at the time of discovery when in fact the illicit activity continued into 2003. By failing to take action before the Commonwealth of Massachusetts investigation, the directors of Putnam acquiesced in or condoned such conduct. No shareholder demand would reasonably have caused them to change their complicit disregard for the wrongdoing.

## COUNT I

### Violation Of Section 36 Of The Investment Company Act And For Control Personal Liability Under The Investment Company Act
### (Against the Putnam Defendants and the Trustees)

43.     Plaintiff incorporates by reference all paragraphs above as if set forth herein.

44.     Pursuant to Section 36 of the Investment Company Act, 15 U.S.C. § 80a-35(b), the investment advisor of a mutual fund owes to the mutual fund and its shareholders a fiduciary duty with respect to its receipt of compensation for services or payments of any material nature, paid by the mutual fund or its shareholders to such investment advisor or any affiliated person.

---

[4] See Sec. and Exch. Comm'n v. Scott, et al., 03-CV-12082 (D. Mass. filed Oct. 28, 2003).

45. Pursuant to Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), a civil action may be brought by a mutual fund shareholder against an investment advisor or any affiliated person who has breached his or its fiduciary duty concerning such compensation or other payments.

46. As alleged above in this Complaint, each Putnam Defendant and each Trustee breached his or its fiduciary duty with respect to the receipt of compensation or other payments from the Putnam Funds or their shareholders.

47. By agreeing and/or conspiring amongst themselves and with John Does 50-100 to permit and/or encourage the Putnam Fiduciary Defendants and John Does 50-100 to time the Putnam Funds, the Putnam Defendants placed their own self-interest in maximizing their compensation and other payments over the interest of the Putnam Funds and its shareholders.

48. By virtue of the foregoing, the Putnam Defendants and the Trustees have violated Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b).

49. As a direct and proximate result of the Putnam Defendants' wrongful conduct, the assets and value (including the NAV) of the Putnam Funds have been reduced and diminished and the corporate assets of the Putnam Funds have been wasted and the Putnam Defendants and the Trustees are liable.

## COUNT II

### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 (Against PIM and John Does 1-100)

50. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

51. PIM directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business and manipulative devices which operated as a fraud and deceit on the

Putnam Funds. The purpose and effect of the scheme, plan, and unlawful course of conduct was, among other things, to deceive and harm the Plaintiff and cause the Putnam Funds to sell securities at artificially deflated values as described in the Complaint.

52. The Putnam Funds have suffered damages as a result of the wrongs herein alleged in an amount to be proved at trial.

53. By reason of the foregoing, PIM has violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Putnam Funds for damages which they suffered in connection with the purchase or sale of securities in those funds.

## COUNT III

### VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
### (Against the Putnam Defendants)

54. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

55. Putnam acted as a controlling person of PIM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of PIM being a wholly-owned subsidiary of Putnam and Putnam's active participation in and/or awareness of PIM's day-to-day operations, Putnam had the power to influence and control and did influence and control, directly or indirectly, the decision-making of PIM. Putnam had unlimited access to PIM's records of transactions and had the ability to prevent PIM from engaging in the schemes and artifices to defraud complained of in this Complaint.

56. Putnam had direct and supervisory involvement over the day-to-day operations of PIM and, therefore, is presumed to have had and did have the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57. By virtue of its position as a controlling person, Putnam is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of their wrongful conduct,

19

the Putnam Funds suffered damages in connection with the acts and practices alleged in this Complaint.

## COUNT IV

### Common Law Breach Of Fiduciary Duty
### (Against the Putnam Defendants and the Trustee Defendants)

58. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

59. The Putnam Defendants and the Trustee Defendants and each of them owed to the Putnam Research Fund, Putnam OTC & Emerging Growth Fund, Putnam New Opportunities Fund, the Putnam Funds and their shareholders, the duty to exercise due care and diligence, honesty and loyalty in the management and administration of the affairs of each Putnam Fund and in the use and preservation of its property and assets, and owed the duty of full and candid disclosure of all material facts thereto. Further, said defendants owed a duty to the Putnam Funds and their shareholders not to waste the funds' corporate assets and not to place their own personal self-interest above the best interest of the funds and their shareholders.

60. To discharge those duties, the Putnam Defendants and the Trustee Defendants were required to exercise prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of the Putnam Funds.

61. As alleged above, each of said defendants breached his or its fiduciary duty by receiving excessive compensation or payments in connection with the timing scheme and other manipulative schemes as alleged in this Complaint.

62. As alleged above, each of said defendants also breached his or its fiduciary duty to preserve and not to waste the assets of the Putnam Funds by permitting or incurring excess charges and expenses to the funds in connection with the timing scheme and other manipulative schemes as alleged in this Complaint.

20

## COUNT V

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against John Does 51-100)

63. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

64. John Does 51-100 knew of the existence of the fiduciary duty between the Putnam Defendants and the Trustee Defendants and the Putnam Funds and knew the extent of that duty. John Does 51-100 knew of the acts of late trading and timing made by them on the Putnam Funds and knew that these acts and manipulative devices were a breach of the fiduciary duties the Putnam Defendants and the Trustee Defendants owed to the Putnam Funds. John Does 50-100 maliciously, without justification and through unlawful means, aided and abetted and conspired with the Putnam Defendants and the Trustee Defendants in breaching their fiduciary duties and provided substantial assistance and encouragement to the Putnam Defendants and the Trustee Defendants in violating their fiduciary duties in the manner and by the actions described in this Complaint.

65. John Does 51-100 are jointly and severally liable to the Putnam Funds for damages proximately caused by their aiding and abetting as alleged herein.

66. As a direct and proximate result of defendants' wrongful conduct, the assets and value (including the NAV) of the Funds has been reduced and diminished and the corporate assets of the Funds have been wasted.

## COUNT VI

### CIVIL CONSPIRACY
### (Against the Putnam Defendants, PIM and John Does 1-100)

67. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

68. The Putnam Defendants, PIM and John Does 1-100 entered into an agreement or agreements or combinations with each other to accomplish by common plan the illegal acts

21

described in this Complaint and by their actions demonstrated the existence of an agreement and combination.

69. The Putnam Defendants, PIM and John Does 1-100 by their actions have manifested actual knowledge that a tortious or illegal act or acts was planned and their intention to aid in such act or acts.

70. The Putnam Defendants, PIM and John Does 1-100 maliciously and intentionally conspired, combined and agreed with one another to commit the unlawful acts alleged in this Complaint or to commit acts by unlawful means causing injury to Plaintiff and proximately causing injury and damages to the Plaintiff for which they are jointly and severally liable.

71. The Putnam Funds have suffered damages as a result of the wrongs and the conspiracy to commit such wrongs as alleged in the Complaint in an amount to be proved at trial.

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. Removing the current Trustees of the Trust and replacing them with independent Trustees,

B. Awarding monetary damages against all of the Defendants, jointly and severally, in favor of the Putnam Funds, for all losses and damages suffered as a result of the wrongdoings alleged in this Complaint, including punitive damages where appropriate, together with interest thereon,

C. Awarding plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for plaintiff's attorneys, and experts,

D. Granting plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANED

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated:  Boston, Massachusetts
        December 3, 2003

                                              PUTNAM, LLC, et al.

                                              By their attorneys,

                                              _____
                                              Steven J. Brooks/BBO# 059140
                                              Robert D. Hillman/BBO# 552637
                                              **DEUTSCH WILLIAMS BROOKS
                                                DERENSIS & HOLLAND, P.C.**
                                              99 Summer Street
                                              Boston, MA 02110
                                              (617) 951-2300
                                              rhillman@dwboston.com

Counsel:

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Daniel W. Krasner
Fred T. Isquith
Mark C. Rifkin
Robert Abrams
Christopher S. Hinton
270 Madison Avenue
New York, NY  10016
(212) 545-4600

**CHITWOOD & HARLEY**
Martin D. Chitwood
Lauren D. Antonino
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
(404) 873-3900

**LAW OFFICES OF BRUCE G. MURPHY**
265 Llwyds Lane
Vero Beach, FL 32963
(772) 231-4202

## VERIFICATION

I, *Seth B. Marks*, being competent to testify and based on personal knowledge, hereby verify that I have read the foregoing complaint against Defendants and that it is true and correct to the best of my knowledge, information, and belief.

Dated: December 2, 2003

*/s/ Seth B. Marks*